IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DR. ANA EVERETT, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>GEORGIA DEPARTMENT OF TRANSPORTATION, et al.,<br><br>    Defendants. | CIVIL ACTION FILE<br>NO. 1:23-CV-5799-TWT |

OPINION AND ORDER

This is a civil rights case. It is before the Court on Defendant RMD Holdings, LTD's Motion to Dismiss [Doc. 16]. For the reasons stated below, RMD's Motion to Dismiss [Doc. 16] is GRANTED.

### I.   Background[1]

This case involves alleged racial and sex-based discrimination that has denied the Plaintiffs the opportunity to contract with the State of Georgia. Plaintiff Ana Everett is the President and CEO of Plaintiff Solutions Ae, Inc ("SAE"). (First Am. Compl. ¶ 2). Plaintiff Everett is an African-American woman, and Plaintiff SAE is a certified Disadvantaged Business Enterprise ("DBE") (*Id.* ¶¶ 7, 28). The Defendants include the Georgia Department of

---

[1] The Court accepts the facts as alleged in the First Amended Complaint as true for purposes of the present Motion to Dismiss. *Wildling v. DNC Servs. Corp.*, 941 F.3d 1116, 1122 (11th Cir. 2019).

Transportation ("GDOT"), various officials and/or employees at GDOT, and RMD, a for-profit Michigan corporation. (*Id.* ¶¶ 3-4[2]). RMD is a non-minority owned business. (*Id.* ¶ 27).

The Plaintiffs allege that SAE entered into a Guardrail, Cable Barrier, & Impact Attenuator Maintenance Service Contract with GDOT on December 19, 2018. (*Id.* ¶ 9). The contract's term was for five consecutive one-year periods. (*Id.* ¶ 10). On or about January 29, 2021, GDOT contacted Everett and demanded that SAE pay $11,523.94 for damages that GDOT claimed SAE caused to utility lines. (*Id.* ¶ 12). The Plaintiffs independently investigated the charge and determined that SAE had not caused the damages. (*Id.* ¶ 14). However, GDOT insisted that SAE pay the amount, and the Plaintiffs acquiesced in an effort to maintain friendly business relations. (*Id.* ¶ 15-16). After sending the payment, the Plaintiffs received internal emails from GDOT that, according to GDOT, showed SAE damaged the utility lines. (*Id.* ¶ 18). In fact, those emails showed that SAE was not at fault. (*Id.* ¶ 19). Because the GDOT invoice contained the incorrect address, the payment was returned to SAE. (*Id.* ¶ 21). GDOT continued to demand the payment, but the Plaintiffs refused at that point. (*Id.* ¶ 22).

---

[2] The First Amended Complaint has a paragraph numbered "3a" between the third and fourth paragraph. The Court's cited range is inclusive of that paragraph.

GDOT then provided SAE with a list of projects that GDOT contended SAE had not performed properly under the Contract. (*Id.* ¶ 23). All of the projects in fact had been properly performed by SAE, and SAE was ultimately paid in full for them. (*Id.* ¶ 26). The Plaintiffs allege on information and belief that GDOT purposefully provided the list of projects in retaliation for not paying the demanded amount for the utility line damage and in order to transfer SAE's contract to RMD, a non-minority-owned business. (*Id.* ¶ 24). The Plaintiffs also allege on information and belief that RMD "assisted GDOT in that purpose by spreading false information and/or misinformation about SAE's performance of its Contract with GDOT and conspired with GDOT to have GDOT's contract transferred from SAE to" RMD. (*Id.* ¶ 25).

On June 9, 2021, the Plaintiffs filed a Title VI Complaint against GDOT alleging that GDOT was purposefully attempting to discriminate against the Plaintiffs to terminate SAE's contract and transfer it to a non-minority-owned business. (*Id.* ¶¶ 28, 30). Believing it still had an ongoing Contract with GDOT, SAE continued to perform projects. (*Id.* ¶ 32). However, on December 22, 2021, GDOT informed Everett that SAE no longer qualified for GDOT contracts because SAE had failed to submit an application for renewal of the contract. (*Id.* ¶¶ 33-34). In previous years, the contract had been renewed without further action or application by SAE, other than to sign an updated contract. (*Id.* ¶ 31). GDOT informed Everett that SAE could become requalified for

GDOT contracts by submitting a new application. (*Id.* ¶ 35). However, by the time SAE was requalified on September 28, 2022, SAE's contract had already been transferred to RMD. (*Id.* ¶¶ 37-38).

Based on these actions, the Plaintiffs filed the present lawsuit. They assert discrimination and retaliation claims based on their race and sex. (*Id.* ¶¶ 47-49, 53-56). They also assert a conspiracy to commit racial discrimination against both of the Defendants. (*Id.* ¶¶ 50-52). RMD now moves to dismiss all claims against it.

## II. Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Amwi. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983); *see also Sanjuan v. American Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff

"receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

### III.   Discussion

RMD argues that the Plaintiffs' claims are time-barred and that the Plaintiffs fail to state a claim against it. The Court agrees. Starting with the failure to state a claim, the Plaintiffs allegations against RMD are woefully inadequate. For starters, the Plaintiffs only provide conclusory allegations that there existed a conspiracy between RMD and GDOT. The Plaintiffs allege based on information and belief that RMD "assisted in and conspired with GDOT in some or all of the actions set forth above in order to have SAE's Contract with GDOT terminated and transferred to Nationwide because of Dr. Everett's race and sex and the status of SEA as a DBE." (First Am. Compl. ¶ 44). However, "[i]n conspiracy cases, a defendant must be informed of the nature of the conspiracy which is alleged. It is not enough to simply aver in the complaint that a conspiracy existed." *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) (citations omitted). The only allegation that even arguably informs RMD of the nature of the alleged conspiracy is Paragraph 25. There,

5

the Plaintiffs allege that RMD "spread[] false information and/or misinformation about SAE's performance of its Contract with GDOT." (First Am. Compl. ¶ 25). Even accepting this as true and even assuming that RMD had done so to receive the Plaintiffs' contract, this is insufficient to create a reasonable inference of a conspiracy to racially discriminate. To find such a conspiracy based on that allegation, the Court would have to speculate about the nature of the false information, whether there was an express or implied agreement to provide such information, and whether race (rather than pure economic benefit) influenced the decision to spread the false information. The Court cannot and will not make such conjectures.

Turning to the Title VI and 23 U.S.C. § 324 claims, the Plaintiffs have made no allegation that RMD received federal funds. Each of those statutes only prohibits discrimination "under any program or activity receiving Federal assistance." 42 U.S.C. § 2000d; 23 U.S.C. § 324.[3] While the Plaintiffs allege that GDOT receives federal funds, they make no such allegation as to RMD. (First Am. Compl. ¶ 32). Accordingly, these claims fail as against RMD. *See Godby v. Montgomery Cnty. Bd. Of Educ.*, 996 F. Supp. 1390, 1413 (M.D. Ala.

---

[3] With respect to entire private enterprises, "program or activity" means all of the operations of that enterprise "if assistance is extended to such corporation, partnership, private organization, or sole proprietorship as a whole" or if the private enterprise is "principally engaged in the business of providing education, health care, housing, social services, or parks and recreation." 42 U.S.C. § 2000d-4a.

1998).

Moreover, even if RMD did receive federal funds, the Plaintiffs do not allege facts that show RMD engaged in intentional discrimination. "Title VI itself provides no more protection than the equal protection clause—both provisions bar only intentional discrimination." *Elston v. Talladega Cnty. Bd. Of Educ.*, 997 F.2d 1394, 1405 n. 11 (11th Cir. 1993) (citation omitted).[4] The Plaintiffs only make conclusory allegations of intentional discrimination by RMD. For example, the Plaintiffs allege: "Based on information and belief, Nationwide assisted in and conspired with GDOT in some or all of the actions set forth above in order to have SAE's Contract with GDOT terminated and transferred to Nationwide because of Dr. Everett's race and sex and the status of SEA as a DBE." (First Am. Compl. ¶ 44).[5] This is insufficient. In *Iqbal*, the plaintiff alleged that the defendants subjected him to harsh conditions "as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest." *Iqbal*, 556 U.S. at 680. The Supreme Court found that such a conclusory allegation did not state a claim. *Id.*; *see also*

---

[4] The Plaintiffs "have not alleged, or shown the court, that a Title VI regulation necessitates that this court analyze the present case as anything more than a case about intentional discrimination." *Godby*, 996 F. Supp. at 1413.

[5] The Plaintiffs make similarly worded allegations elsewhere in the First Amended Complaint. (*See* First Am. Compl. ¶¶ 48, 55, 55 (repeated enumeration in the original)). These allegations fail to state a claim for the same reason as Paragraph 44.

7

*Nali v. Ekman*, 355 F. App'x 909, 913 (6th Cir. 2009) ("[A] complaint that includes conclusory allegations of discriminatory intent without additional supporting details does not sufficiently show that the pleader is entitled to relief." (citation omitted)). The Plaintiffs do not point to any factual allegations that support their allegations of discrimination. For all of these reasons, the claims against RMD are dismissed for failure to state a claim.

Finally, it appears to the Court that the claims are time-barred, which if true would render amendment futile. The parties agree that the statute of limitations for these claims is two years. (RMD's Br. in Supp. of Mot. to Dismiss, at 5; Pls.' Br. in Opp'n to Mot. to Dismiss, at 3). The Plaintiffs filed their original Complaint on December 15, 2023. (Compl., at 1). RMD argues that the claims are time-barred because the Plaintiffs knew of their claims when they filed their EEO complaint against GDOT on June 9, 2021, more than two years before they filed the present lawsuit. (RMD's Br. in Supp. of Mot. to Dismiss, at 5). The Plaintiffs contend that when GDOT informed them on December 21, 2021 that it was too late to renew their contract, it constituted a distinct discriminatory act that occurred within two years of filing the present lawsuit. (Pls.' Br. in Opp'n to Mot. to Dismiss, at 3-6). RMD replies that the letter GDOT sent the Plaintiffs is a consequence of the alleged violation rather than a violation itself and that RMD was not involved in sending the letter. (Reply Br. in Supp. of Mot. to Dismiss, at 1-5). Regardless

8

of whose characterization of the letter is accurate, the claims against RMD are time-barred.

"The proper focus for purposes of establishing the time at which the limitations period begins to run is on the time of the *discriminatory act*, not the point at which the *consequences* of the act become painful." *Calhoun v. Fed. Nat'l Mortg. Ass'n*, 823 F.2d 451, 455 (11th Cir. 1987) (quotation marks and citation omitted). If GDOT's letter stating it was too late for Plaintiffs to renew their contract was a mere consequence of the alleged discrimination and retaliation, then all of the alleged violations took place more than two years before the Plaintiffs initiated this lawsuit.[6] Thus, if GDOT's letter was simply a consequence of the violation, the statute of limitation would have finished running before the Plaintiffs filed this suit.

Even if the Court were to accept the Plaintiffs' characterization of the GDOT letter as a discrete discriminatory act, the claims against RMD would still appear to be time-barred. The Supreme Court has held that "discrete acts that fall within the statutory time period do not make timely acts that fall

---

[6] Furthermore, it cannot be maintained that the statute of limitations had not commenced because the Plaintiffs were unaware of the violations. The Plaintiffs filed a Title VI complaint on June 9, 2021, alleging discrimination by GDOT in attempting to transfer the Plaintiffs' contract to RMD. The Eleventh Circuit has "limited the application of the continuing violation doctrine to situations in which a reasonably prudent plaintiff would have been unable to determine that a violation had occurred." *Ctr. for Biological Diversity v. Hamilton*, 453 F.3d 1331, 1335 (11th Cir. 2006).

outside the time period." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 112 (2002). If GDOT's letter were a discrete act that falls within the two-year statute of limitations, it would not change the fact that RMD's previous discrete actions were outside the statute of limitations.[7] Since there is no allegation that RMD participated in sending the letter, the only involvement it had in allegedly discriminating against the Plaintiffs occurred more than two years before this lawsuit commenced, namely the alleged spreading of misinformation. Therefore, the claims against RMD are time-barred, regardless of which party's description of the letter is correct. The Court dismisses the claims against RMD without prejudice.[8]

## IV. Conclusion

For the foregoing reasons, RMD's Motion to Dismiss [Doc. 16] is GRANTED. The Plaintiffs are DIRECTED to file an amended complaint curing the pleading deficiencies noted in this Order within 14 days from the date of

---

[7] As above, given that the Plaintiffs filed a Title VI complaint regarding these events in June 2021, the Plaintiffs cannot plausibly argue that they did not know that RMD's alleged violations occurred.

[8] The Court dismisses without prejudice to give the Plaintiffs the opportunity to address the insufficiencies described above. The Court notes, however, that RMD raised all of its arguments in its previous Motion to Dismiss [Doc. 8]. Even though the Plaintiffs had notice of the shortcomings of their original Complaint, they did not attempt to add allegations that would cure the defects RMD raised. The Court cautions the Plaintiffs that if they choose to restate their claims against RMD and fail to cure the deficiencies noted above, their claims will be subject to dismissal with prejudice.

this Order. If the Plaintiffs choose not file an amended complaint within 14 days of the date of this Order, the dismissal will be with prejudice.

SO ORDERED, this <u>  29th  </u> day of March, 2024.

*[signature: Thomas W. Thrash]*
THOMAS W. THRASH, JR.
United States District Judge

11